**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| **BENJAMIN BRIAN CONNER,** | ) | **Civil Case No. 2:14-cv-4145-SB-MGB** |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | |
| | ) | |
| **NUCOR CORPORATION (aka** | ) | **REPORT AND RECOMMENDATION** |
| **NUCOR STEEL-BERKELEY),** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

In this employment action, defendant Nucor Corporation ("Nucor") has filed a "Partial Motion to Dismiss" pursuant to Rule 12(b)(6) for failure to state a claim. (DE#7). The plaintiff responded (DE#15), and Nucor replied. (DE#16). This matter was referred to the Magistrate Judge for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., and 28 U.S.C. § 636(b)(1)(B). Having carefully considered the pleadings, the parties' briefs, and applicable authority, the undersigned recommends that Nucor's motion be **granted in part** and **denied in part**, for the following reasons:

**I. Factual Allegations**

In summary, the Complaint alleges the following: Plaintiff Benjamin Conner is a U.S. Army veteran (Iraq 2003-2004). (DE# 1, ¶¶ 16, 36). From May 27, 2008 through August 17, 2013, he was employed by Nucor Steel-Berkeley ("Nucor") as a Cold Mill Metallurgist (¶¶ 1, 23). Nucor is a corporation and federal contractor which produces steel products in Huger, South Carolina. (¶¶ 20- 22). Plaintiff advised his supervisor Mr. Slesinski of certain medical conditions in November 2011 (¶ 28). Plaintiff has a back injury, was diagnosed with Post Traumatic Stress Disorder ("PTSD") in 2012, and "received a formal notice of disability and rating from the Veteran's Administration that year." (¶¶ 7, 33, 37). He has a service-related VA disability rating

of 70% for several medical issues (¶ 17). Plaintiff advised Mr. Slesinski of this, requested confidentiality regarding his personal medical information, and sought leave and accommodation so that he could obtain treatment (¶¶ 29, 31). Nucor gave him the leave he requested (¶¶ 30, 32).

According to plaintiff, "individuals beyond those with a 'need to know' were given plaintiff's medical information, leading to negative treatment … and hostility" against him (¶ 32). He alleges that "his disability was not considered socially acceptable" (¶ 39). Due to this perception, he says he began receiving unequal treatment in the form of unequal discipline and increased scrutiny in fall 2011 until his separation from employment in 2013 (¶ 41). He contends that persons, including one of his supervisors (Mr. Howard Smith), made comments such as "if you were not performing well you would be let go" (¶¶ 26, 40). According to plaintiff, supervisors "[Robert] Moses and [Howard] Smith consistently derided [his] work in order to provoke his anxiety and trigger his disability" (¶ 41). He reported this conduct to Slesinski (¶ 41). Plaintiff complains that he was "disciplined for foul language" when similarly situated nondisabled/non-veteran employees were not disciplined for foul language (¶ 42). He complains that in 2013, he "applied for a flexible schedule" which was initially denied, but then granted (¶ 43). He contends that he "was  meant to feel as though his particular disability was the reason he was met with resistance" and that "Moses in particular made Plaintiff feel that he did not deserve employment or accommodation due to his disability and Slesinski was aware of the same"(¶ 43). He alleges that Smith "treated him negatively" because of his disability (¶ 48). Plaintiff indicates he made complaints about "unequal treatment and harassment by his peers and supervisor" primarily to Slesinski (¶¶ 44-47).

According to plaintiff, Nucor employees "bring fire arms in to the facility, and are rarely if ever disciplined" but that he was "formally counseled" for showing a firearm and a photo of a

firearm on separate occasions to a coworker (¶¶ 56-57). On the day he returned from leave on May 6, 2013, he met with supervisor Smith (¶ 52). Plaintiff indicates that "during that conversation Plaintiff sought to assure Smith that he was not a threat," but that "Smith was openly hostile, opined that Plaintiff was a poor performer, [and] was a drain on the Defendant…" (¶ 52). Plaintiff advised Slesinski and Moses of Smith's comments (¶¶ 58-59). He alleges that Moses did not investigate the matter (¶ 59). The next day Smith repeatedly called plaintiff, emailed, and eventually came to plaintiff's home on May 7th, 2014, but plaintiff refused to discuss matters with him (¶ 60). A meeting was held May 8, 2013 with GM Daughtridge and Supervisor Moses who plaintiff says "accused [him of] causing trouble" (¶ 61). Plaintiff asked for an investigation (¶ 62). According to plaintiff, he was subsequently "granted medical leave and forced to resign based on the hostile work environment, dissemination of information related to disability, unequal treatment and its effect on his health" (¶ 63).[1]

## II.  Standard of Review

In civil actions, the complaint must contain "a short and plain statement of the grounds for the court's jurisdiction" and "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief." Fed.R.Civ.P. 8(a). Under the federal rules, a party may move to dismiss for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). When considering a Rule 12(b)(6) motion, the court must accept the plaintiff's factual allegations as true and draw all reasonable inferences in the plaintiff's favor, but need not accept legal conclusions or unreasonable inferences. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *E.I. du Pont de Nemours & Co. v. Kolon Indus.*, 637 F.3d 435, 440 (4th Cir.2011). "To survive a motion to dismiss [under Rule 12], a complaint must contain sufficient factual matter, accepted as true,

---

[1] Nucor points out that plaintiff was not fired, but rather, resigned from his position. Plaintiff contends he was "constructively discharged."

to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *Twombly*, 550 U .S. at 555 ("a formulaic recitation of the elements of a cause of action will not do"). "Facts pled that are 'merely consistent with' liability are not sufficient." *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir.) (quoting *Iqbal*, 556 U.S. at 678), *cert. denied*, 132 S.Ct. 1960 (2011).[2]

## III.   The Causes of Action Alleged in the Complaint

The Complaint seeks to bring claims of "discrimination, breach of contract and retaliation" and "seeks damages under several federal causes of action including but not limited to the Rehabilitation Act of 1973 [Rehab Act], as amended, the Vietnam Era Veterans' Readjustment Assistance Act of 1974 [VEVRA], the Family Medical Leave Act [FMLA], and the American with Disabilities Act [ADA], and further, seeks relief and an award of damages pursuant to the common and statutory laws of the State of South Carolina." (DE# 1, ¶¶ 1, 4).

In Count 1, plaintiff alleges violation of the ADA because Nucor's conduct has allegedly "resulted in the creation of a discriminatory and hostile environment as to Plaintiff based on his status as a disabled veteran." (¶¶ 69-74). In Count 2, he alleges "discrimination and retaliation" in violation of the ADA, FMLA, VEVRA, The Rehabilitation Act of 1972, and public policy. (¶¶ 75-83). In Count 3, he asserts breach of contract under state law. (¶¶ 84-92). In Count 4, he alleges violation of the FMLA for "interference, restraint, and denial" of his right to FMLA leave. (¶¶ 93-97).

## IV. Arguments Presented

---

[2] Although plaintiff and defendant both cite cases that were decided on summary judgment, those cases often are not particularly helpful or relevant for purposes of review under Rule 12(b)(6).

Nucor argues that part of Count 2 should be dismissed. Specifically, although plaintiff indicates that Count 2 alleges "discrimination and retaliation" under five different sources of law, Nucor asserts that not all apply here, *i.e.* VEVRA, The Rehabilitation Act of 1972, and public policy. Nucor argues that Count 3 (breach of contract) should be entirely dismissed for two independent reasons: 1) the handbook policies relied on by plaintiff are too general to create a "contract," and 2) plaintiff signed an express waiver acknowledging that he was an at-will employee. Lastly, Nucor argues that Count 4 (FMLA interference) should be entirely dismissed because, as the Complaint acknowledges, Nucor granted plaintiff all the leave he requested.

## V. Analysis

### A. Count 2: No private cause of action under VEVRA

Plaintiff brings Count 2 under numerous statutes, including VEVRA, 38 U.S.C. § 4212 ("Veterans' employment emphasis under Federal contracts"), which provides in relevant part:

> (a) Any contract in the amount of $10,000 or more entered into by any department or agency for the procurement of personal property and non-personal services (including construction) for the United States, shall contain a provision requiring that the party contracting with the United States shall take affirmative action to employ and advance in employment qualified special disabled veterans and veterans of the Vietnam era.
> * * *
> (b) If any special disabled veteran or veteran of the Vietnam era believes any contractor of the United States has failed to comply or refuses to comply with the provisions of the contractor's contract relating to the employment of veterans, the veteran may file a complaint with the Secretary of Labor, who shall promptly investigate such complaint and take appropriate action in accordance with the terms of the contract and applicable laws and regulations.

38 U.S.C. § 4212.[3]

---

[3] VEVRA was previously codified at 38 U.S.C. § 2012 and has been redesignated. See Pub.L. 102–83 § 5 (Aug. 6, 1991), 105 Stat. 405, 406.

Nucor correctly asserts that plaintiff's VEVRA claim is subject to dismissal because the statute does not authorize a private right of action. Nucor points out that the statute expressly provides for administrative enforcement through the Department of Labor, which has exclusive authority to enforce the statute. *See, e.g., Armstrong v. Rolm A. Siemans Co.*, 129 F.3d 1258, 1997 WL 705376, *3 (4th Cir. 1997) (holding that "the district court properly dismissed this claim pursuant to Rule 12(b)(6) because there is no private cause of action against federal contractors under § 402 of VEVRA), *cert. denied*, 523 U.S. 1080 (1998); *Barron v. Nightingale Roofing, Inc.*, 842 F.2d 20, 22 (1st Cir. 1988) (affirming dismissal pursuant to Rule 12(b)(6), and holding that VEVRA did not create private right of action in favor of veteran against private government contractor); *Antol v. Perry,* 82 F.3d 1291, 1297 n.5 (3rd Cir. 1996) ("there is no private right of action under 38 U.S.C. § 4212"); *Suazo v. Regents of Univ. of Calif.,* 149 F.3d 1191 (10th Cir. 1998) ("we join the other courts that have addressed the issue and hold that plaintiff has no private right of action" under VEVRA); *Murry v. Jacobs Tech. Inc*., 2012 WL 1145938, *19 (M.D.N.C.) (same), *aff'd*, 568 F.App'x 265 (4th Cir. 2014) (per curiam).

To the extent plaintiff asks "in the alternative" for leave to amend his complaint to cure any pleading deficiencies (DE# 15 at 2, 20), plaintiff may not embed a motion in his response brief. He has not filed a motion to amend or tendered a proposed amended complaint for review. In any event, amendment of the alleged facts would not "cure" the legal deficiency, namely that plaintiff has no private cause of action under VEVRA. As the suggested amendment would be futile as a matter of law, leave to amend for this purpose would not be appropriate. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (leave to amend is freely given unless futile).

One additional point should be mentioned. Nucor asks for dismissal with prejudice, while plaintiff asks that any dismissal be without prejudice. In *Armstrong*, the Fourth Circuit Court of

Appeals affirmed dismissal of a VEVRA claim pursuant to Rule 12(b)(6). *Id.*, 1997 WL 705376, at *3 ("We find that the district court properly dismissed this claim pursuant to Rule 12(b)(6) because there is no private cause of action against federal contractors" under VEVRA). Dismissal for failure to state a claim under Rule 12(b)(6) "is presumed to be both a judgment on the merits and to be rendered with prejudice." *McLean v. United States*, 566 F.3d 391, 396 (4th Cir. 2009); *and see, Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981) ("The dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a judgment on the merits."); *Carter v. Norfolk Cmty. Hosp. Assoc.*, 761 F.2d 970, 974 (4th Cir.1985) ("A district court's dismissal under Rule 12(b)(6) is, of course, with prejudice unless it specifically orders dismissal without prejudice."). Although plaintiff asks that any dismissal be "without prejudice," that would allow the claim to be refiled in federal court, which would not be appropriate in these circumstances. The dismissal of this cause of action should be "with prejudice."

### B. Count 2:  No private cause of action under § 793 of the Rehabilitation Act

For similar reasons, Nucor moves to dismiss plaintiff's claim under the Rehabilitation Act of 1973, 29 U.S.C. §§ 701-797b ("Rehab Act"). Section 503(a) requires the inclusion in any federal contract exceeding $10,000 of a provision requiring the contractor to "take affirmative action to employ and advance in employment qualified individuals with disabilities." 29 U.S.C. § 793(a). Like VEVRA, the statute provides for administrative enforcement. Nucor correctly asserts that it is well-settled that this section of the Rehab Act does not provide an implied private cause of action in federal court. *See Painter v. Home Bros., Inc.*, 710 F.2d 143, 144 (4th Cir.1983) (collecting cases and holding, "[i]n agreement with all of the circuits which have considered the issue," there is no implied private right of action under § 503 of the Rehab Act);

*Armstrong*, 1997 WL 705376, *3 ("Construed generously pursuant to Section 503 of the Rehabilitation Act of 1973, 29 U.S.C. § 793… this claim, too, fails for lack of a private cause of action."); *Davis v. United Airlines Inc*., 662 F.2d 120, 127 (2d Cir.1981), *cert. denied*, 456 U.S. 965 (1982) (same); *Rogers v. Frito Lay, Inc.,* 611 F.2d 1074 (5th Cir.1980), *cert. denied*, 449 U.S. 889 (1980) (same).

Again, to the extent, plaintiff "alternatively" asks in his response brief to be allowed "to amend" such claim, plaintiff has not actually filed a motion to amend nor tendered an amended complaint. Amendment of the factual assertions in the Complaint would not "cure" the legal deficiency at issue and would be futile. *See, e.g., Nyanjom v. Hawker Beechcraft, Inc*., 2014 WL 129377, *2-3 (D.Kan.) (denying motion to amend claims under VEVRA and Rehab Act on grounds of futility). Dismissal with prejudice of such claim pursuant to Rule 12(b)(6) is appropriate. *See, e.g., Hodges v. Atchison, Topeka, & Santa Fe Ry., Co*., 728 F.2d 414, 416 (10th Cir. 1984) (affirming Rule 12(b)(6) dismissal of § 793 claim), *cert. denied*, 469 U.S. 822 (1984).

Nucor correctly points out that another section of the Rehab Act that does provide a private cause of action, *i.e.* 29 U.S.C. § 794 ("Nondiscrimination under Federal grants and programs"), has not been specifically alleged in the Complaint here, and in any event, would not apply to Nucor. *See e.g., Jones v. UPS, Inc*., 378 F.Supp.2d 1312, 1314 (D.Kan.2005) (dismissing plaintiff's claims pursuant to Rule 12(b)(6) because "[a]lthough other portions of the Rehabilitation Act may provide for a private right of action, *see, e.g*., 29 U.S.C. § 794, those provisions do not apply to defendant").

Here, the Complaint does not mention § 794, and moreover, fails to plead any facts suggesting a plausible basis for § 794 to apply. The Complaint merely alleges that "Nucor is, on information and belief, a government contractor" and that "Nucor holds contracts with the

Federal Government." (DE# 1, ¶¶ 11, 21). Even when accepted as true, such alleged facts are not enough to state a claim "that is plausible on its face." *Iqbal*, 556 U.S. at 678. The Complaint's factual allegations are insufficient to withstand dismissal of any Rehab Act claim under Rule 12(b)(6).

Nucor points out that Section 504 of the Rehab Act applies to federal agencies or to any program or activity receiving "federal financial assistance." 29 U.S.C. § 794(a). A "program or activity" can include a "corporation, partnership, or other private organization ... which is principally engaged in the business of providing education, health care, housing, social services, or parks and recreation[,] ... any part of which receives Federal financial assistance." 29 U.S.C. § 794(b)(3)(A)(ii). The Complaint does not allege any facts indicating that Nucor qualifies as a "program or activity" that receives "federal financial assistance," *i.e.* a federal subsidy. Nucor, which is in the business of manufacturing steel (rather than "education, health care, housing, social services, or parks and recreation"), points out that that it does not receive "federal financial assistance" within the meaning of the Rehab Act. (DE#7 at 4). The Complaint acknowledges that "Nucor is a corporation which produces steel products in Huger, SC, including coils and beams." (DE# 1, ¶ 20).

Although plaintiff makes much of the fact that his Complaint alleges that Nucor is a "federal contractor," courts have repeatedly held as a matter of law that a private entity's procurement contract with the government does not qualify as "federal financial assistance" for purposes of the statute. *See, e g., Smith v. Laidlaw Transit, Inc*., 2006 WL 6036888, *8 (D.S.C.) ("Defendant was not a recipient of federal financial assistance for purposes of a Rehabilitation Act claim, and cannot therefore be sued under that Act."), *aff'd* 196 F.App'x 153 (4th Cir. 2006); *Jarno v. Lewis*, 256 F.Supp.2d 499, 504 (E.D. Va. 2003) (collecting cases holding that

"procurement contracts do not constitute federal financial assistance where the recipient receives no government subsidy for its service but rather acts solely as a market participant"). As the court explained in *Jarno*, "[t]he case law and applicable regulation indicate that the term "federal financial assistance" should be given its plain and ordinary meaning, that is, aid provided to assist rather than to compensate for services rendered. *Id*., 256 F.Supp.2d at 504.

Although plaintiff asserts that "the Fourth Circuit has yet to address this issue" (DE# 15 at 19), this is not accurate. The present case involves the same issue (*i.e.* whether a federal contractor receives "federal financial assistance" by virtue of having a government contract) and is procedurally similar to the Title VII case of *Venkatraman v. REI Systems, Inc.*, 417 F.3d 418, 420 (4th Cir.2005). There, "the precise question at issue" was whether the Complaint had "stated a cause of action" on such basis. The Fourth Circuit Court of Appeals found that, although plaintiff argued that his Complaint had alleged REI was a "Federal Government subcontractor," the Complaint did not allege facts indicating that REI had received "federal financial assistance." *Id*. at 421 (explaining that it is the receipt of "federal financial assistance" rather than the mere existence of a contractual relationship that controls). The Fourth Circuit Court of Appeals emphasized that "REI's status as a government contractor is irrelevant" and that "the regulations implementing Title VI, the legislative history, and cases … all indicate that market contracts between federal contractors and the government do not constitute such 'assistance.' " *Id*. The Fourth Circuit Court of Appeals explained that "an entity receives 'assistance' [under Title VI] when it receives a subsidy, as opposed to compensation." *Id*. at 421 (*citing Jacobson v. Delta Airlines, Inc*., 742 F.2d 1202, 1209–11 (9th Cir.1984), *cert. dismissed*, 471 U.S. 1062 (1985)); *see also, DeVargas v. Mason & Hanger-Silas Mason Co., Inc*., 911 F.2d 1377 (10th Cir. 1990) (holding that an "entity receives financial assistance when it receives a subsidy"), *cert. denied*,

498 U.S. 1074 (1991); *Allen v. Center for Creative Leadership*, 2006 WL 1743285, *2 (M.D.N.C.) (dismissing pursuant to Rule 12(b)(6) because merely "alleging contracts with the federal government … falls short of the required allegation of 'financial assistance' necessary to state a claim").[4]

In sum, to the extent the plaintiff has listed the Rehab Act as a basis for Count 2, the plaintiff has no private cause of action under § 793. The Complaint does not mention § 794 or plead any facts that would suggest such section might be applicable, and thus, the Complaint also fails to state a plausible claim under § 794. *See Venkatraman*, 417 F.3d at 424 (affirming dismissal of Rehab Act claims pursuant to Rule 12(b)(6)). To the extent Count 2 asserts any claims under the Rehab Act, dismissal of such claims pursuant to Rule 12(b)(6) is appropriate.

### C.  Count 2:  No public policy claim where statutory remedies exist

Plaintiff also briefly mentions "public policy" as one of the grounds for Count 2. Nucor asserts that despite Count 2's generalized reference to "violation of state and/or federal public policy," the Complaint fails to articulate any specific source of alleged public policy on which plaintiff relies other than the four federal statutes under which he specifically seeks relief (ADA, FMLA, VEVRA, Rehab Act). In fact, in his response, plaintiff asserts that he was retaliated "against specifically for exercising rights guaranteed" by such statutes. (DE# 15 at 5). This undermines his "public policy" argument because, as discussed below, a public policy claim may not proceed when existing statutory remedies (*i.e.*, under FMLA and ADA) are available.

In *Ludwick v. This Minute of Carolina, Inc*., 287 S.C. 219, 337 S.E.2d 213 (S.C.1985), the South Carolina Supreme Court recognized a narrow exception for a cause of action under state tort law where the discharge of an at-will employee violates a clear public policy. The most

---

[4] Regulations for various federal agencies expressly exclude "procurement contracts" from the definition of "federal financial assistance." *See, e.g.*, 49 C.F.R. § 27.5(c); 10 C.F.R. § 1040.2(b)(3) (1985).

frequently cited (non-exclusive) example is "when an employer requires an at-will employee, as a condition of retaining employment, to violate the law", and then discharges the employee for refusing to do so. *Id*. at 216; *see also, Culler v. Blue Ridge Elec. Co-op., Inc.*, 309 S.C. 243, 246 (1992). The "public policy" exception to South Carolina's at-will doctrine is "very narrowly" applied. *Merck v. Advanced Drainage Systems, Inc*., 921 F.2d 549, 554 (4th Cir. 1990) ("although the Ludwick doctrine exists as an exception to the long established principle that an at-will employee may be terminated at will, it is, however, an exception that is to be very narrowly applied"); *Kramer v. Omnicare ESC, LLC,* 2015 WL 1120077, *5-6 (D.S.C.) (same).

Nucor correctly points out that courts have repeatedly held that this type of claim may not proceed where a plaintiff has an existing statutory remedy for the allegedly wrongful termination. *Stiles v. Am. Gen. Life Ins. Co*., 335 S.C. 222, 228 (1999) (explaining that "the Ludwick exception is not designed to overlap an employee's statutory or contractual rights to challenge a discharge, but rather to provide a remedy for a clear violation of public policy where no other reasonable means of redress exists"). "When a statute creates a substantive right and provides a remedy for infringement of that right, the plaintiff is limited to that statutory remedy." *Dockins v. Ingles Markets*, 306 S.C. 496, 498 (1992); *see also, Epps v. Clarendon Cty.*, 304 S.C. 424, 426 (1991) ("the employee has an existing remedy for a discharge"); *Kramer*, 2015 WL 1120077 at *5-6 ("a *Ludwick* claim cannot be asserted where there are federal or state statutory remedies available to vindicate the public policies allegedly implicated by a plaintiff's termination"); *Jefferson v. Chestnut Group, Inc*., 2009 WL 302312, at *2 (D.S.C.) (dismissing public policy claim under Rule 12(b)(6) because statutory remedies were available); *Palmer v. House of Blues Myrtle Beach Rest. Corp.*, 2006 WL 2708278, *3 (D.S.C.) ("the public policy exception does not ... extend to situations where the employee has an existing statutory remedy

for wrongful termination"); *Nimmons v. RBC Insurc. Holdings (USA)*, *Inc.*, 2007 WL 4571179, *1-2 (D.S.C.) (same); *Ramsey v. Vanguard Servs., Inc.*, 2007 WL 904526, *2 (D.S.C.) (same). Here, as pleaded in the Complaint, and as acknowledged by plaintiff in his response brief, plaintiff has existing statutory remedies for his alleged wrongful termination.

Plaintiff suggests that the Complaint's reference to public policy is merely pleading "in the alternative using multiple theories" and that he should "not be penalized for the novelty of his theories." (DE# 15 at 8). Given the abundance of case law holding that public policy claims are barred when existing statutory remedies exist, plaintiff's argument is not novel or persuasive, and provides no basis to avoid dismissal. *See, e.g., Frazier v. Target Corp.*, 2009 WL 3459221, *3 (D.S.C.) ("courts routinely dismiss … claims for wrongful discharge that are barred by statutory remedies at the 12(b)(6) stage."). Plaintiff has specific statutory remedies available (and has pleaded them) under the ADA and FMLA. As Nucor correctly points out, the plaintiff brings claims under specific federal statutes "for the same alleged wrongs he seeks relief from pursuant to some unidentified public policy." (DE# 7 at 6). This is squarely foreclosed by relevant case law. *See, e.g., Gray v. Am. Homepatient, Inc.*, 2014 WL 7965987, *4-5, ("In sum, as Plaintiff has a statutory remedy for her retaliatory termination claim, she may not pursue a separate state law public policy/wrongful termination cause of action."), *adopted by* 2015 WL 892780 (D.S.C.); *Riley v. Southern Care, Inc.*, 2013 WL 1809788, *4 (D.S.C.) (dismissing plaintiff's claim for wrongful termination in violation of public policy pursuant to Rule 12(b)(6)). Nucor points out that "nowhere in his Complaint does plaintiff identify any particular public policy with enough specificity for this Court to determine whether the claims are plausible on their face." (DE# 15 at 7). For all these reasons, Count 2's reference to "public policy" is insufficient to state a claim for relief, and any such claim should be dismissed pursuant to Rule 12(b)(6).

### D. Count 3: Breach of Contract

In Count 3 of the Complaint, plaintiff asserts a claim for "breach of contract" under state law. (DE#1, ¶¶ 84-92).[5] Plaintiff attaches to the Complaint several pages from Nucor's employee handbook, *i.e.* the policies regarding "Harassment" and "Progressive Discipline." Based on these, he alleges:

> 85. During Plaintiff's employment Defendant issued or had in force employee handbooks and manuals which were available to all employees. (See exhibit A and B). The handbooks altered Plaintiff's employment status as they contained explicit promises regarding the terms and conditions of employment. The handbooks contained promissory language. Accordingly, the handbooks create a contract of employment between the Plaintiff and the Defendant.

> 86. Among other things the handbooks promise that the Defendant will in fact provide equal employment opportunities without regard to veteran's status or disability; will investigate allegations of improper behavior and will fairly, will completely and discretely investigate said complaints and will not tolerate retaliation against employees who utilize the complaint system or request accommodation and will engage in a meaningful discourse with regard to accommodation issues relevant to individuals with disabilities.

> 87. Defendant's handbook also included progressive discipline. This and other policies constitute a mandatory procedure.

> 88. Upon information and belief Defendant's handbook and other policies contained promissory language ensuring equal treatment of all employees not only within the workplace but with regard to the handling of personnel matters.

> 89. Upon information and belief such procedures are binding up (sic) the Defendant and constitute a contract.

> 90. Defendant's conduct set forth above breached the provisions of the Defendant's handbook, policies and procedures.

> 91. As a direct and proximate result of the Defendant's breach of its policies and procedures Plaintiff has suffered damages.

---

[5] In Count 2, plaintiff alleges a public policy claim as an "at-will" employee. In Count 3, he inconsistently (or "alternatively") alleges that he had a contract of employment by virtue of the employee handbook.

(DE# 1, ¶¶ 85-90).

Nucor moves to dismiss this "breach of contract" claim on two independent grounds, namely, that 1) the policies relied on by plaintiff are too general to overcome the presumption of at-will employment and create an employment contract, and 2) the express disclaimer contained in the handbook precludes any finding that the handbook creates such a contract. (DE#7 at 9-12).

### 1st Asserted Ground: General policies did not create an employment contract

It is well-settled in South Carolina that employment is presumed to be "at-will." *Barron v. Labor Finders of S.C.*, 393 S.C. 609, 614 (2011); *Mathis v. Brown & Brown of S.C., Inc.*, 389 S.C. 299, 308 (2010). To withstand a motion to dismiss, the Complaint must first plead sufficient factual allegations plausibly indicating the existence of an employment contract beyond the at-will relationship. *See, e.g., Weaver v. John Lucas Tree Expert Co.*, 2013 WL 5587854, *5 (D.S.C.) ("It is axiomatic that to recover under a theory of breach of contract, a valid contract must have existed between the parties."); *Perrine v. G4S Secure Solutions (USA), Inc.*, 2011 WL 3563110, *1 (D.S.C.) (dismissing claim pursuant to Rule 12(b)(6) because complaint failed "to plead sufficient factual allegations that establish the existence of an employment contract beyond the at-will relationship"); *Gray*, 2014 WL 7965987 at *4-5 ("Plaintiff has failed to allege in her complaint any specific language from the employee handbook to establish a plausible claim that her at-will employment relationship was altered by any such language."); *Amason v. P.K. Mgmt., LLC*, 2011 WL 1100169, *6 (D.S.C.) (same).[6]

Here, the Complaint alleges in conclusory fashion that a "contract" existed based on the "Harassment" and "Progressive Discipline" policies from Nucor's employment handbook, but

---

[6] Under South Carolina law, the necessary elements of a contract are an offer, acceptance, and valuable consideration. *Roberts v. Gaskins*, 327 S.C. 478, 483 (1997).

does not point to any mandatory promissory language in those two policies. Under South Carolina law,

> Mandatory discipline procedures "typically provide that an employee may be fired only after certain steps are taken. When definite and mandatory, these procedures impose a limitation on the employer's right to terminate an employee at any time, for any reason." *Hessenthaler*, 365 S.C. at 109, 616 S.E.2d at 698. Permissive language in an employee handbook, on the other hand, does not alter an employee's at-will status.

*Grant v. Mount Vernon Mills, Inc*., 370 S.C. 138, 148 (S.C.App.2006). "For a general policy statement to be enforceable as a contract, the statement "must be definitive in nature, promising specific treatment in specific situations." *Id*.; *Anthony v. Atl. Grp., Inc*., 909 F.Supp.2d 455, 467 (D.S.C.2012).

Nucor correctly asserts that the Complaint fails to allege or identify any mandatory promissory language in the two general policies that would create an employment contract. The Complaint merely alleges in conclusory fashion that the employee handbook policies "constitute a mandatory procedure" (¶ 87), without alleging facts or language that would permit such inference to be drawn. Review of the attached policies does not reveal "mandatory" language sufficient to create a contract. For example, the attached "Policy for Violation for Work and/or Safety Rules" indicates that "[t]hese steps are only guides and variations will be necessary at times to consider all individual circumstances pertaining to a situation." (DE# 1, Ex. B). The attached "Harassment Policy" generally indicates that "Nucor is committed to providing a work environment that is free of discrimination and unlawful harassment" and indicates that any perceived harassment should be reported. (DE# 1, Ex. A, "if you believe you are being harassed in any way…, you should report these actions…If you … are dissatisfied in any way with the action taken, immediately report your dissatisfaction to the next higher level of management").

Notably, neither policy limits Nucor's right to terminate an employee. *See e.g., Brailsford v. Fresenius Med. Center CNA Kidney Centers*, 2015 WL 4459032, *4-5 (D.S.C.) (dismissing breach of contract claim pursuant to Rule 12(b)(6) and observing that plaintiff had failed to allege that he entered into a contract which "impose[d] a limitation on [the employer's] right to terminate [his employment] at any time, for any reason"); *Woodruff v. MAU Workforce Solutions*, 2014 WL 3749342, *6 (D.S.C.) ("the handbook must restrict the right of the employer to discharge the employee"); *Weaver*, 2013 WL 5587854, at *6 (the complaint must "set forth sufficient factual allegations … to state a facially plausible claim that the [p]arties entered into a contract with terms of employment that limited the duration of the relationship or the right of termination or both.").

Numerous courts have held that the existence of a progressive disciplinary procedure does not alter an employee's "at-will" status. *See Horton v. Darby Elec. Co., Inc*., 360 S.C. 58, 67-68 (2004) (holding that employee handbook containing progressive disciplinary procedure did not alter employee's at-will status); *Grant*, 370 S.C. at 150 ("[B]ecause nothing in the employee handbook outlined progressive disciplinary procedures in mandatory terms, the presumption that the employment was at-will was not rebutted and no disclaimer was needed…we hold the handbook did not contain promises enforceable in contract."); *Woodruff*, 2014 WL 3749342, at *6 ("because Plaintiff has not pointed the Court to any mandatory language, this claim is appropriately dismissed because the handbook did not create a valid employment contract").

To the extent the Complaint relies on Nucor's general policy against harassment and retaliation, numerous courts have found similar policies to be insufficient to form a "contract" of employment. *See e.g., Frasier v. Verizon Wireless*, 2008 WL 724037, *2 (D.S.C.) (holding that

handbook policy prohibiting retaliation "does not create an expectation that employment is guaranteed or that a particular process must be complied with before an employee is terminated"); *King v. Marriott Int'l, Inc.*, 520 F.Supp.2d 748, 756 (D.S.C.2007) (holding that policy indicating "there will be no discrimination or recrimination against an employee who asserts a complaint against the Company" does not mean that "employment is guaranteed or that a particular process must be complied with before an employee is terminated"), *aff'd* 267 F.App'x 301 (4th Cir), *cert. denied*, 555 U.S. 1044 (2008); *Weaver*, 2013 WL 5587854, at *7 (dismissing claim because "Plaintiff merely offers the "conclusory assertion" that his termination was in some manner noncompliant with the Company's policies and procedures"); *Ford v. Musashi S.C., Inc.*, 2008 WL 4414385 (D.S.C.), *adopted in part by*, 2008 WL 4414497, *3 (D.S.C.) ("where an employee handbook provides a general policy statement of non-discrimination such a 'provision does not constitute a promise altering the at-will employment relationship...' "); *Babayan v. Delfin Grp. USA LLC*, 2014 WL 5488396, *10 (D.S.C.) (dismissing breach of contract claim because plaintiff merely alleged that "Defendant breached her contract of employment by breaching the allegedly 'mandatory' language of its anti-discrimination policy by discriminating against her"); *Petrosyan v. Delfin Grp. U.S.A., LLC*, 2015 WL 685266, *12 (D.S.C.) (collecting cases, and observing that "Plaintiff simply alleges that the employee handbook 'uses mandatory language' and then cites selected passages from the handbook relating to certain workplace rules and the Defendant's anti-discrimination policy… the language cited by the Plaintiff in his …Complaint is typical of antidiscrimination language found in most employee handbooks, and has routinely been held by courts not to, by itself, constitute a contract"); *Pierce v. Office Depot, Inc.*, 2014 WL 6473630, *2 (D.S.C.) (dismissing breach of contract claim pursuant to Rule 12(b)(6) for failure to state a claim); *Westmoreland v.*

*AB Beverage Co., Inc.*, 2007 WL 2749450, *13 (D.S.C.) (same). Here, the Complaint has failed to plead sufficient factual allegations to plausibly state the existence of an employment contract beyond the at-will relationship.

Although the Complaint alleges that these two handbook policies "altered [p]laintiff's employment status as they contained explicit promises regarding the terms and conditions of employment" (¶ 85), such characterization is conclusory. Courts need not accept legal conclusions as true for purposes of Rule 12(b)(6) review. *Iqbal*, 556 U.S. at 678; *E.I. du Pont de Nemours*, 637 F.3d at 440; *Grant*, 370 S.C. at 148 ("the law does not sanction the leap advocated by [plaintiff]"). Count 3 of the Complaint merely sets forth labels and conclusions, which the United States Supreme Court has made clear will not suffice. *Twombly*, 550 U.S. at 555. Conclusory allegations aside, the Complaint does not state sufficient facts to indicate that an employment contract existed, and thus, does not state a plausible claim for breach of contract.

### 2nd Asserted Ground: Express disclaimer/waiver signed by plaintiff

With respect to its second ground for dismissal of Count 3, Nucor attaches the one-page waiver/disclaimer that plaintiff signed when he was hired. Such disclaimer indicates:

> "I certify that I have read the above disclaimer and expressly understand that the employee handbook **DOES NOT CREATE AN EXPRESS OR IMPLIED CONTRACT OF EMPLOYMENT. I UNDERSTAND THAT THE EMPLOYMENT RELATIONSHIP IS "AT-WILL" AND CAN BE TERMINATED BY EITHER NUCOR STEEL BERKLEY OR ME AT ANY TIME, FOR ANY REASON, OR FOR NO REASON.**"

(DE#7, Ex. 1, bolding/capitalization/underlining in original). Nucor asserts that its employment handbook contained a proper, signed, conspicuous disclaimer preserving at-will employment status as a matter of law. Nucor asserts that the disclaimer "complies fully with the South

Carolina statute and that plaintiff's "breach of contract" claim should be dismissed pursuant to Rule 12(b)(6). (DE# 7 at 9, citing South Carolina Code § 41-1-110).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.' " *Zak v. Chelsea Therapeutics Int'l, Ltd*., 780 F.3d 597, 607 (4th Cir. 2015); *see also*, 5A C. Wright & A. Miller, Fed. Prac. & Proc. § 1357, at 299 (2d ed.1990) ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record). Courts "should focus their inquiry on the sufficiency of the facts relied upon by the plaintiffs in the complaint." *Zak*, 780 F.3d at 607 (*citing Am. Chiropractic Assoc. v. Trigon Healthcare, Inc*., 367 F.3d 212, 234 (4th Cir.), *cert. denied*, 543 U.S. 979 (2004)).

"Consideration of a document attached to a motion to dismiss ordinarily is permitted only when the document is 'integral to and explicitly relied on in the complaint,' and when 'the plaintiffs do not challenge [the document's] authenticity." *Zak*, 780 F.3d at 607 (*quoting Phillips v. LCI Int'l Inc*., 190 F.3d 609, 618 (4th Cir.1999)); *and see, Pension Ben. Guar. Corp. v. White Consol. Industries, Inc*., 998 F.2d 1192, 1196 (3rd Cir. 1993) ("a court may properly consider a concededly authentic document upon which the complaint is based when the defendant attaches such a document to its motion to dismiss … Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document"), *cert. denied*, 510 U.S. 1042 (1994). That appears to be the precise situation here. Plaintiff did not attach the signed waiver/disclaimer from the employee handbook to his Complaint, and thus Nucor appropriately attached it to the motion to dismiss.

In an attempt to save this claim from dismissal, plaintiff argues in his response brief that the waiver/disclaimer should not be considered because: 1) the Complaint did not "rely" on such document, and 2) he is "compelled to challenge its authenticity." (DE# 15 at 13). Of course, plaintiff relied on the employee handbook (or more accurately, portions of it), and the disclaimer was part of the handbook. Given that plaintiff is asserting a breach of contract claim founded on the assertion that the handbook created an employment contract, plaintiff cannot seriously argue that the handbook, including the express disclaimer/waiver, is not "integral" to the Complaint. *See Pension Ben. Guar. Corp*, 998 F.2d at 1196 ("Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document").

As to authenticity, the case law indicates that a court can consider a document attached to a motion to dismiss (and that is integral to the Complaint) so long as the document is "concededly authentic." *Zak*, 780 F.3d at 607; *Phillips*, 190 F.3d at 618. Here, plaintiff asserts that he challenges the authenticity of the waiver that bears his signature. (DE# 15 at 13). Plaintiff urges that "we do not know at this point if the waiver is valid or the circumstances under which it was obtained, if at all." (*Id*.). Factual disputes about the authenticity of a document preclude its consideration on Rule 12(b)(6) review.

Regardless, the Court need not reach the second ground (*i.e.* the express waiver), as the first ground (failure to allege or identify mandatory promissory language) provides an independent ground for dismissal. *See, e.g., Woodruff*, 2014 WL 3749342, *6 n.1 ("Because the Plaintiff has not pointed the Court to any specific, mandatory language giving rise to an enforceable contract, the Court need not decide whether the disclaimer was conspicuous under South Carolina law."); *Gray*, 2014 WL 7965987, at *9 ("While a clear compliance with the terms of the state disclosure statute would obviously be important, it is not required (and

certainly does not establish the existence of a contract) if the employee handbook at issue otherwise does not contain mandatory language sufficient to alter the presumption in South Carolina of an at-will employee relationship."); *Dune v. G4s Regulated Security Solutions, Inc.*, 2014 WL 7920436, *18 (D.S.C.) (even absent a disclaimer, "it is still necessary in order to maintain a breach of contract claim that the handbook contain mandatory language sufficient to alter the presumption in South Carolina of an at-will employee relationship"), *adopted by* 2015 WL 799523 (D.S.C.). The breach of contract claim should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim for relief.

### E.  Counts 2 (FMLA discrimination/retaliation) and Count 4 (FMLA interference)

Finally, Nucor moves for dismissal or partial dismissal of plaintiff's separate claims under the Family & Medical Leave Act of 1993, 29 U.S.C. §§ 2601-2654 ("FMLA"). The FMLA provides an eligible employee with up to twelve weeks of unpaid leave to deal with a "serious health condition" of himself or a family member, and provides for job restoration after using such leave. 29 U.S.C. §§ 2612(a)(1), 2614(a)). To protect these rights, the statute authorizes two types of claims: interference claims and retaliation claims.

"Interference" (or "entitlement") claims arise under 29 U.S.C.A. § 2615(a)(1), which provides that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." "Retaliation" (or "discrimination") claims arise under 29 U.S.C.A. § 2615(a)(2), which provides that "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." *See Dotson v. Pfizer, Inc.*, 558 F.3d 284, 294 (4th Cir.) ("[i]n addition to providing a substantive or 'prescriptive' right to unpaid leave in certain situations, the FMLA also provides proscriptive rights 'that protect

employees from discrimination or retaliation for exercising their substantive rights under the FMLA.' "), *cert. denied*, 558 U.S. 933 (2009); *Yashenko v. Harrah's NC Casino Co*., 446 F.3d 541, 546 (4th Cir.2006) (discussing differences between the two types of FMLA claim); and see, 1 Emp. Discrim. Coord. Analysis of Federal Law § 32:75 ("The FMLA recognizes two types of claims for alleged violations of the Act: interference claims, in which employers burden or outright deny substantive statutory rights to which their employees are entitled, and retaliation claims, in which employers discharge employees for exercising their FMLA right to take leave.").

**Count 2: The FMLA Retaliation/Discrimination Claim**

Plaintiff captions Count 2 as "discrimination and retaliation" under five sources of law, including the FMLA and ADA, and then alleges:

> 76. Plaintiff sought protection, accommodation and leave under the ADA and FMLA with the employer.
> 77. That Plaintiff complained numerous times to his supervisors that medical information had been disseminated and that he had been and was being discriminated against for utilizing the ADA and FMLA protections afforded by law.
> 78. In retaliation for Plaintiff's internal complaints under the Americans with Disabilities Act and Vietnam Era Veterans' Readjustment Assistance Act of 1974, the Rehabilitation Act, as well as the Family Medical Leave Act, he was subject to negative employment actions, including increased scrutiny and discipline, isolation and harassment.
> 79. The above circumstances are sufficiently severe and pervasive as to alter the conditions of Plaintiff's employment and create a working environment which was abusive, intimidating, and discriminatory against veterans who took FMLA leave, and the disabled. The employer via retaliation encourages discrimination via intimidation and fear of retribution.
> 80. That as a result of Defendant's actions, Plaintiff continues to suffer the penalties for seeking to enforce his rights.
> 81. Retaliation for seeking the enforcement of rights given by law to a disabled person, a person seeking FMLA leave and or a veteran is prohibited by the ADA, the Family Medical Leave Act, the Rehabilitation Act and the VEVRAA, as well as the public policies of the United States and the State of South Carolina.

(DE# 1, ¶¶ 76-81). Paragraph 77 references "discrimination," while paragraphs 78 and 81 reference "retaliation," and paragraph 79 alleges that such retaliation created a "working environment" which was "discriminatory against veterans who took FMLA leave, and the disabled." Paragraph 79 also circuitously alleges that "the employer via retaliation encourages discrimination."

In its motion to dismiss, Nucor asserts that: "To the extent that plaintiff alleges any claim of FMLA 'discrimination' *separate* from his retaliation claim, this cause of action is subsumed by his FMLA retaliation claim and is not a separate discrete claim." (DE# 7 at 8). Nucor urges that to the extent any additional FMLA "claims" are alleged in Count 2, they should be dismissed. Essentially, Nucor seeks confirmation that Count 2 asserts only one FMLA retaliation claim. Nucor asserts that a hostile work environment "claim" is not recognized by the FMLA, but does not discuss any pertinent case law for such proposition. (DE#7 at 7-8).

In response, plaintiff generally discusses the FMLA but does not directly address Nucor's arguments. (DE# 15 at 13-15). He asserts that he has pleaded a "*prima facie* case under the FMLA." Although plaintiff contends he has pleaded a *prima facie* case of FMLA retaliation, this pertains only to summary judgment review, not the Rule 12(b)(6) review at issue here. In *Swierkiewicz v. Sorema*, the Supreme Court unanimously held that the *prima facie* case under *McDonnell Douglas* is an evidentiary standard, not a pleading requirement. 534 U.S. 506, 510 (2002). *See Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (explaining that "a plaintiff is not required to plead facts that constitute a *prima facie* case in order to survive a motion to dismiss" and reiterating that for purposes of Rule 12(b)(6) review, "[f]actual allegations must be enough to raise a right to relief above the speculative level") (citing *Swierkiewicz*, 534 U.S. at 510–15, and *Twombly*, 550 U.S. at 555), *cert. denied*, 131 U.S.

3059 (2011); *Keys v. Humana*, 684 F.3d 605, 609 (6th Cir. 2012) (emphasizing that the prima facie case is part of the evidentiary burden-shifting framework for cases based on indirect evidence, and that "it was error for the district court to require Keys to plead a prima facie case under *McDonnell Douglas* in order to survive a motion to dismiss"); *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 54 (1st Cir. 2013) (collecting cases).

In reply, Nucor points out that the plaintiff "fails to rebut Nucor's argument justifying dismissal of any hostile work environment or discrimination claims distinct from his FMLA retaliation claim." (DE# 16 at 3). Nucor also discusses the two cases cited by plaintiff and indicates that plaintiff has not cited them for accurate propositions.

Ultimately, the parties' respective arguments regarding the FMLA part of Count 2 are not very helpful, and the task of sorting out what has actually been pleaded (or intended) in Count 2 is made difficult by the inclusion of so many grounds and so many statutes, including the ADA and FMLA, in a single count.

Nucor cites numerous cases generally describing the two types of FMLA claims and is generally correct that claims under 29 U.S.C.A. § 2615(a)(2) are commonly referred to as FMLA "discrimination" or "retaliation" claims. Nucor urges that "any claim of FMLA 'discrimination' *separate* from his retaliation claim … is subsumed by his FMLA retaliation claim and is not a separate discrete claim" (DE# 7 at 8). As currently pleaded in Count 2, it is difficult to discern what claims plaintiff is actually alleging (and under what theory), although there is no question that he is at least alleging an FMLA retaliation claim. Nucor's argument understandably seeks clarification. It is unclear whether plaintiff intends for such "hostile work environment" theory to be a basis for his FMLA retaliation claim (or ADA retaliation claim) or whether he is actually attempting to assert it as a separate discrete "discrimination" FMLA claim. A complaint should

"give the defendant fair notice of what the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93, (2007) (per curiam). Given the lack of clarity in Count 2, and to the extent plaintiff asks to amend his complaint, leave to amend for clarification of Count 2 (rather than dismissal at this time) is appropriate (assuming that plaintiff files a proper motion to amend with a tendered amended complaint).

**Count 4: the FMLA Interference Claim**

Plaintiff captions Count 4 as an FMLA "interference" claim. (DE# 1, ¶¶ 93-97). He recites the statutory language, alleging that:

> 94. The actions of the Defendant as set forth above constitute an interference, restraint and denial of the exercise of Plaintiffs' right to Family Medical Leave.
> 95. Plaintiff has been severely prejudiced and retaliated against in his employment as a result of Defendant's violations of the Act.

The factual section of the Complaint, however, indicates that "Plaintiff received leave pursuant to Defendant's policies and procedures throughout his tenure with Defendant for his health issues" (¶ 30); that "Plaintiff received intermittent and customary FMLA leave, as well as other available leave and vacation pursuant to the employer's policies" (¶ 39); and that "Plaintiff was subsequently granted medical leave" (¶ 63). In short, the Complaint fails to allege any denial of FMLA rights to which plaintiff was entitled.

Nucor therefore moves to dismiss the "interference" claim because 1) the Complaint does not allege that Nucor ever denied him any FMLA leave or scheduling accommodations; and in fact, 2) the Complaint indicates that Nucor consistently granted him the requested FMLA leave during his employment. (DE# 7 at 8-9, citing Compl. ¶¶ 30, 39, 63). Nucor asserts that the Complaint fails to state a claim for FMLA interference because plaintiff has not alleged that Nucor denied him any FMLA benefits to which he was entitled.

In response, plaintiff acknowledges that the Complaint "does not allege that he did not receive FMLA leave" but insists that he "does allege that he was subject to discrimination and retaliation for using the leave … " (DE# 15 at 14). He points to ¶ 95 in Count 4 (interference claim), which generally alleges that he was "retaliated against in his employment as a result of Defendant's violations of the Act." Plaintiff apparently is asserting retaliation under both the "interference" and "retaliation" prongs of the FMLA. Plaintiff argues that his Complaint alleges that he "engaged in protected activity,"[7] that Nucor took "negative employment actions," and that "the adverse action was related to the protected activity." (DE# 15 at 14-15).

Plaintiff cites 29 C.F.R. § 825.220(c) which provides that "the Act's prohibition against interference prohibits an employer from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights... employers cannot use the taking of FMLA leave as a negative factor in employment actions." The regulation indicates that "[i]nterfering with the exercise of an employee's rights would include, for example, not only refusing to authorize FMLA leave, but discouraging an employee from using such leave." 29 C.F.R. § 825.220(b); *see e.g., Croy v. Blue Ridge Bread, Inc*., 2013 WL 3776802, *8 (W.D.Va.) (discouraging an employee from taking FMLA leave can constitute "interference").

The factual section of the Complaint includes the allegations that: "Plaintiff was made to feel that taking the leave, along with having his condition, was a risk to his employment, and made him a 'second class citizen' in the workplace" (¶ 39); that he "complained about receiving unequal treatment from his supervisors, being the butt of belittling comments, harassment and

---

[7] Although plaintiff cites ¶¶ 2, 12, 18, 19, 28, those paragraphs do not allege any facts regarding any protected activity by plaintiff. He also cites ¶ 29 ("Plaintiff advised Manager Slesinski and sought leave and accommodation so that he could obtain treatment.") and ¶ 30 ("Plaintiff received leave pursuant to Defendant's policies and procedures throughout his tenure with Defendant for his health issues.").

verbal penalties and chastisement when he needed to attend doctor's appointments or needed assistance" (¶ 44); and that he came under increased scrutiny and discipline (¶ 64). Liberally construed for purposes of Rule 12(b)(6) review, and drawing all reasonable factual inferences in favor of plaintiff, these allegations are sufficient to state a plausible FMLA interference claim to survive a Rule 12(b)(6) motion to dismiss.

Plaintiff cites two cases for the proposition that "in addition to his retaliation claims,…the facts as plead also constitute interference …" (DE# 15 at 15, citing *Downs v. Winchester Med. Ctr.*, 21 F. Supp.3d 615, 618-19 (W.D. Va. 2014) and *Santarocco v. Chesapeake Holding Co.*, 2010 WL 2464972, *5 (D. Md.). Those cases do not help his case. *Santarocco* is dissimilar because it involved summary judgment on an interference claim in a "reduction in force" situation. Nucor correctly points out that the court in *Downs* recognized claims based on 29 C.F.R. § 825.220 as retaliation claims – not interference claims. (DE# 16 at 3). In *Downs*, the Court dismissed the interference claim, explaining:

> [B]ecause she has failed to allege that she was actually denied any FMLA benefits, Downs has failed to allege any prejudice related to FMLA interference. Thus, because she has failed to show prejudice through the denial of her substantive rights under the FMLA, her interference claim cannot survive. *Croy*, 2013 WL 3776802, at *9 (citing *Anderson v. Discovery Communications, LLC*, 517 F.App'x 190, 198 (4th Cir.2013) (unpublished table decision) (amended May 3, 2013))…. while she has clearly stated a claim for FMLA retaliation, she has failed to state a claim for interference.

*Downs*, 21 F. Supp.3d at 617. There is authority for allowing a retaliation claim to proceed under either prong of the statute. *See* 29 C.F.R. § 825.220; *Seeger v. Cinc. Bell Tel. Co., LLC*, 681 F.3d 274, 282 (6th Cir. 2012) ("Although we have held that a claim for retaliatory discharge is cognizable under either theory, the requisite proofs differ."); *Gray*, 2014 WL 7965987 at *4-5 (denying Rule 12 dismissal of FMLA claim and observing that "the case law appears to allow the

Plaintiff to pursue both an interference claim and a retaliation claim simultaneously under the facts alleged, at least at this early stage of the proceedings").

## VI. Conclusion

In conclusion, to the extent Count 2 asserts claims based on VEVRA, the Rehab Act, and public policy, those claim are foreclosed by well-settled law and must be dismissed. Count 3 ("breach of contract") fails to plead sufficient factual allegations plausibly indicating the existence of an employment contract beyond the at-will relationship, and should also be dismissed. The FMLA claims (Count 4 "interference" and Count 2 "retaliation/discrimination") should not be dismissed at this time. To the extent plaintiff requests leave to amend his Complaint, he should be given leave to file a proper motion to amend (and tendered amended complaint) for the purpose of clarifying the FMLA claims.

## <u>RECOMMENDATION</u>

Accordingly, the Magistrate Judge **RECOMMENDS** that the "Partial Motion to Dismiss" (DE#7) be **GRANTED in part and DENIED in part**.

MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

August 13, 2015
Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.**  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).